May it please the Court, my name is Stephanie Adractis and I represent the Petitioner Appellant Alejandro Caballero. There is constitutionally insufficient evidence to support Caballero's conviction for aiding and abetting the attempted murder of Abel Sanchez because no reasonable fact finder could have concluded that Caballero's co-defendant, Espereno, created a kill zone that included Sanchez when he fired a shot directly at another person, Raul Das. While the Reviewing Court must resolve evidentiary conflicts in favor of the verdict, in this case there was no conflicting evidence. The prosecutor's witness, Das, testified that one shot was fired directly at him and he did not know where the other shot was fired. Accordingly, there was no conflicting evidence on those two points. Does it matter that there was no evidence on the second? Yes, Your Honor. I believe it does matter that there was no evidence as to the second shot because that leaves only the first shot as potentially the source of the purported kill zone. And we know from Das' testimony that that shot, the first shot, was fired directly at Das. Well, we know where it hit. The shot was removed from the top of his head, wasn't that right? Yes, Your Honor. 16 pellets. Yes. So we know two things. We know where, I guess it scattered. Do you think it did? Well, Your Honor, I attempted to discern from the record how many pellets would come from that particular type of shell and could not find that information. We know that 16 pellets ended up at the top of Mr. Das' head and I cannot say how many other pellets there were. We know that there was damage to the back, or to the wall, behind where Das is standing. He said, I was directly underneath where the damage was. So we know that some pellets must have gone past him in order to embed themselves in the wall. So all of the evidence corroborates Das' testimony that when Espereno pointed the gun, he pointed it directly at Das. There was no evidence that pellets sprayed in a scatter pattern causing damage that reflected a scatter that would include where Mr. Sanchez was standing. And if one looks at the opinion in People v. Anzalone, even if Sanchez was positioned in a way that he could have been hit by one or more of the pellets, that's not sufficient to show that Espereno created a kill zone. Because the court must look to the scope and nature of the attack, not whether the victim happened to be in a position that put him or her in a zone of danger in order to establish that there was a kill zone. And here it is the nature of how the weapon was pointed. Das testified, it was pointed directly at me, that shows that the intent to kill was aimed solely at Mr. Das. And to get back to Your Honor's question, the second shot, we don't know where that second shot was aimed. And so it is only the first shot that could potentially support the conviction for aiding and abetting attempted murder of Sanchez, and it was not aimed. As a practical matter, how much difference does it make to the sentence if we were to set aside this one attempted murder? Your Honor, it would make a difference because Mr. Caballero was sentenced to what amounted to a 45-year-to-life term. Because of the add-on 20. Yes, Your Honor. So without that, he's sentenced to 25 years to life. If this condition would be vacated, then he would serve a minimum of 25 years, is my understanding. And in California, 25 years to life usually means life. Yes, Your Honor. That's how the parole system is working right now. However, it would be meaningful to Mr. Caballero to have the second conviction vacated. There would be a meaningful effect to him. Would we have to do some fact-finding in order to do that? Your Honor, I think what the court must do is look at the facts in the record and make a determination whether any reasonable fact-finder Somebody did that. Yes, whether a reasonable fact-finder could have concluded that there was a kill zone here. And the thrust of our argument is that absolutely no reasonable fact-finder could have done that. If there was conflicting evidence on that point, our cases say yes, that the conflicts must be resolved in favor of the verdict. But there was no conflicting evidence. There was one witness, Mr. Doss. How do you decide where the kill zone is? Your Honor, the cases that describe the creation of a kill zone in the California courts focus on the nature of the attack and the scope of the attack in determining whether there was a kill zone. So, for example, in one case, Bang, the shooter, shot at least 50 bullets, a spray of bullets directed at a house that had multiple people inside, and there was bullet holes all over the house. And under those circumstances, the court said there was a kill zone created because... There are two people here. The effect of the shot will probably raise the gun or raise the weapon. The weapon was raised over Doss's head when it fired. The other fellow, Sanchez, was kneeling below him. So if the weapon was aimed at Doss, it was also aimed at Sanchez, and the normal kick would have picked it up, you could say there was a kill zone on a vertical scale rather than a horizontal scale, which were the cases that you were thinking about. But it doesn't have to be horizontal. It could be vertical. Your Honor, respectfully, with respect to the record, my understanding of the record is that Mr. Sanchez was not standing below or directly under Mr. Doss. He was kneeling, wasn't he? They were kneeling initially, but then when the two defendants got out of the car... I'm confused. Yeah, they told them to get up. And the testimony of Mr. Doss, which is in the excerpts of record, is that they were side by side about a foot apart, not in front of each other. Your Honor, maybe thinking of the cases that talk about victims who are positioned in that way, which are Smith, the Smith case and the Chinchilla case, in both those California cases, the victims were in front of each other. One was in front of the other, I'm sorry. And so when the shot, which was a single line of fire, was aimed at one, it was also aimed at the other. If that had happened in this case, we would have a different outcome. That was not the position of the victims. The victims were side by side, and so we don't have a straight line of fire kill zone in this case like they did in Smith and Chinchilla. So that would be our bottom line. What would we say if we followed the argument you're making? Your Honor, the argument is that the first shot could not have created a kill zone because it was aimed directly only at one victim. The second shot, there's no evidence whatsoever as to where that shot was fired. Accordingly, no reasonable fact finder could have concluded that Esperano created a kill zone with either shot, and so the second conviction, the one with respect to Mr. Abel Sanchez, must be vacated. I have to say I'm sympathetic to the argument. Here we have a defendant who is not himself the shooter, convicted of attempted murder for someone who was not at least directly in the line of fire, and choosing deliberately to avoid the term kill zone. On the other hand, you're probably as familiar as we are with AEDPA and with the recent Shaken Baby case and the obstacles that you face trying to get us, sitting as a federal habeas court, to find insufficient evidence under Jackson in a state case. Understood, Your Honor. In the case the court's referring to, the Shaken Baby, the Smith case recently in the United States Supreme Court, there was conflicting expert testimony regarding whether or not there was sufficient physical manifestations of shearing of the brain stem in that case to support the conclusion that the child died not of sudden infant death syndrome, but instead of being shaken by someone, the defendant. And in this case... By his innocent grandmother. Yes, Your Honor. And in that case, there was conflicting evidence. The Supreme Court's analysis was that although the evidence that supported the verdict was less credible, was later discredited by new expert opinion, that there was evidence that was conflicting and the opinion focuses on that notion that when there is such conflicting evidence, one must resolve those inconsistencies in favor of the verdict. Here, there was no conflicting evidence. There was no testimony. If one were to put this case side by side with that case, it would be a situation where there was no evidence on the prosecution's side to support a notion that a kill zone was created. My brief and all of the evidence focuses solely on the testimony of one witness who was the prosecution's witness at trial. He essentially was uncontested because there was no other person who witnessed this incident. Why don't we hear from Mr. Hayden? You've got some time. Thank you, Your Honor. Good morning. David Wildman, Deputy Attorney General for the State of California. In this case, Caballero and his cohort stopped two victims. They saw them at the park. They followed them from the park in their car, and they confronted them, first driving by them, and then the second time confronted two victims asking, where are you from, which is a gang challenge, which is often a very deadly gang challenge. Then they closed in on the kill. Found them the third time. This is all within a block or two, very short distance. Pulled right into the driveway, a distance of three to four feet, and leveled two shotgun blasts at these victims, the two victims, not just one but two, that they followed from the park. If they really had intended to kill them, they were pretty inept. At that close distance, yes, very lucky for Das and Sanchez. Well, and very inept on the part of the would-be killers. So how much did they really intend to do it? I mean, even I, not an expert, could kill somebody with a shotgun that close. Well, they did hit Das, we know that, and Das and Sanchez were about a foot apart. So the shotgun, which lets out a volley of buckshot, could certainly have hit both of them, and then there were two shotgun blasts, and a reasonable inference that a jury could have drawn is that one was intended for one victim, one was intended for the other victim. But the second was not immediate, and no one saw it, and Das testified that it was somewhere in back of him when he was running away. One would think that if there was an attempt to shoot two people, the two shots would have been almost simultaneous. Now, the record doesn't say what kind of weapon it was. It doesn't say if it was repeating or not, and how to repeat it. It doesn't tell us anything about a kill zone either. We're left to speculate, as the jury was allowed to speculate, as to whether there was an intent to kill each or only one. Well, in this case, what you had is they followed two victims, not just one, all the way to the victim's house. Because the victims were together, they were driving together. You don't know what the intent was, what the state of mind was. There's nothing on it. Well, we know that the shotgun, and a shotgun is not a handgun, so it was very visible to both the driver and to the passenger who was wielding the shotgun, and it was pointed at very close range at two victims who were standing pretty much next to each other. Well, you would think if the shooter wanted to kill both, there would be quick shots in succession. There was only one, and another one came later. It could have been anything. It could have been a warning. It could have been an accident. It could have been anything. And it's not like someone was getting off. Someone was convicted, and convicted of a very serious crime with a very serious punishment. Isn't it a stretch to make two attempts at two individuals out of really one shot? Well, the California cases that discuss the kill zone distinguish between ones where there's two shots and two victims to blasts with many pellets coming out that could hit several victims, and a case like Anzalone where there were only two shots, two gunshots and four victims, and the court said that simply is not a kill zone where you can only hit two victims. In the other case that's discussed by my opposing counsel on the kill zone, Perez, you had seven or eight victims and one shot, and the court said that you can't hit all the victims with that one shot unless it's a magic bullet. Here you had two shotgun blasts, two victims standing right next to each other, and the reasonable inference that a rational jury could draw is that the intent was to kill both of them standing right next to each other. What in your view is a specific legal question before this court at this time? The legal question before this court? Yes. Whether the California Court of Appeal reasonably applaud Jackson v. Virginia. And the California Court of Appeal is entitled to deference in its decision. We know that it applied Jackson. The California courts applied Jackson. They cited to a California case that also quoted from Jackson. So we know they applied the right standard. And here we have two people who followed the victims to the victim's home. They were standing right next to each other, just a foot apart at close range. So we know it's a reasonable inference that a jury could draw. They could also draw other inferences, but this is a reasonable inference they could draw, that the intent was to knock out both of these guys with a shotgun spraying many pellets, at least 16, we know, in each blast. Well, you know, a shotgun is not a very effective way to kill somebody, frankly, particularly to kill two people at once with one shot. I mean, if I'm going to try and kill somebody with a shotgun, I'm going to aim it directly at one and I'm going to aim it directly at the other. I'm not going to sort of spray the top of some guy's head. As we well know, even the vice president of the United States can shoot somebody in the face with a shotgun and the guy survives. Former vice president. Former vice president. This is not a very effective way to kill somebody. And if I were planning a murder, I would not try to kill two people at one time with a single shotgun blast. Well, when gang members take their guns into the community, they generally aren't very effective with their aim. They end up killing many bystanders as a result, as we know. But I don't think our question is whether they were good shots or whether they were effective. It's what their intent was. But that's my point, too. If I'm a gang member and I'm trying to kill two people with a single shot, this doesn't seem to be a very good way to go about it, which then brings me back, well, is that really what was intended? Sure. But what we have here is two guys standing next to each other as the victims and we have two gunshot blasts, each firing the many pellets out. So you would have to. This is a specific intent crime. This is not negligence. This is not gross negligence. This is not manslaughter. This is attempted murder. It's attempted murder. There is intent to kill. There must be proven. Yes. That is correct. Of each. Yes. With a rather laconic charge that didn't give very much guidance to the jury. The words were another. And you couldn't really tell very much from the charge how the jury was instructed. Well, the California Supreme Court in Bland, the seminal case on Killzone, said in a footnote, I believe it was footnote six, that it is an inference, the Killzone is an inference that the jury can draw. It's not a legal doctrine that requires an instruction. Also here, turning to the second point that opposing counsel makes in her brief about the instruction, there was no transfer of intent instruction here. And no lay juror, given this instruction, would assume that a transfer of intent implies. No lay juror would have any idea such a doctrine even exists. And it also doesn't make a difference that California courts came up, changed the jury instructions a year or two down the road after Petitioner's trial. That simply doesn't mean that the prior instructions were no longer valid. They can still be used, either said the Calgic or the Calcrim can be used, unless there are. The charge is the person committing the act harbored express analysis of forethought, namely a specific intent to kill unlawfully another human being. It's not very useful as a guide to the jury in dealing with two attempts on two different people out of a single shot. Well, in this case, I would say, Your Honor, you have jury verdicts, which each point to an individual victim that has to be decided. That's true, and you have a context of the summation that makes it rather clear what's going on. But still, the charge itself, which is what's very influential in terms of guiding the jury to a decision, does not really give much help. Well, I would respectfully disagree. I think this instruction, 8.66, directs the jury and a logical juror to, if you're trying to figure out if it's an attempted murder of a person, that's the person that you're looking at, whether there's an intent to kill. You wouldn't logically, unless instructed specifically, try to figure out if there's an intent to kill Das when you're looking at the attempted murder of Sanchez. A logical juror looking at this... That's the problem. That's really the problem, to put it right away. The juror would think if you prove a specific intent on one, then you prove a specific intent on the other, in effect transferring intent, which is not permissible. No, that's not permissible, but the jury was not given the transfer of intent instruction, which was 8.65. True, true. But given the charge, it's very easy for the jury to think that's what is intended. In my mind, it reinforces the lack of evidence to deal with two specific intents on two specific individuals. It's not that the fellow's getting off, he's there for 20 years to life. In my mind, it's really an enhanced kind of punishment that is involved because two people are endangered by a single shot. But in terms of two specific intents, that problems. I'm not sure of anything further to say on the instruction. If there are no further questions, we'll submit. Thank you. Thank you, Your Honor. I will be brief. To respond to counsel's argument that because the two individuals were together at the park when the incident started and then proceeded over to the house, People v. Anzalone, the analysis in that case addresses that contention, and it rejects the notion that because a second person is in a zone of harm while another is being targeted with violence, that that creates a kill zone. It rejects that notion, and it instructs that the focus is on, again, the scope and nature of the attack upon the individual. So it simply doesn't suffice to say that because Sanchez and Goss were together at the beginning of the incident and then later on and during the shooting that that created a kill zone, it's insufficient under People v. Anzalone. Unless there's other questions. Okay. Thank you very much. Case of Caballero v. Woodford submitted for decision.
judges: Hellerstein, Farris, Fletcher